In the Matter of INTERNATIONAL KITCHENS, a Hawaii Limited Partnership, Debtor.

PEARLRIDGE MALL–JOINT VENTURE # 315068, Plaintiff,

v.

INTERNATIONAL KITCHENS, a Hawaii Limited Partnership, Debtor, Defendant.

Bankruptcy Nos. 80–00147, 80–0023.

United States Bankruptcy Court, D. Hawaii.

July 3, 1980.

James T. Leavitt, Jr., Honolulu, Hawaii, for Landlord.

Lawrence Diamant, Los Angeles, Cal., for Landlord.

Dickson C. H. Lee, Lloyd Y. Asato, Honolulu, Hawaii, for General Partner of International Kitchens.

H. William Burgess, Honolulu, Hawaii, for creditor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT TO RECOVER REAL PROPERTY, FOR RELIEF FROM AUTOMATIC STAY AND/OR FOR ADEQUATE PROTECTION

JON J. CHINEN, Bankruptcy Judge.

On April 8, 1980, Pearlridge Mall Joint Venture 315068 ("Pearlridge") filed the above-entitled Complaint with this Court. The Debtor's answer to the Complaint was filed on April 30, 1980 and a preliminary hearing on the issue of adequate protection was held by this Court on May 1, 1980. At the preliminary hearing and at the trial of the Complaint, the parties stipulated that evidence and exhibits introduced at hearings on a motion filed by Pearlridge seeking dismissal of these proceedings, and evidence and exhibits introduced at the preliminary hearing be introduced by reference in this matter and be considered by this Court as a part of the evidence presented in the trial of the above-entitled complaint. Debtor raised the additional issue of whether certain electrical and common area maintenance charges assessed by Pearlridge were proper. Further testimony was taken on June 4 and 5, 1980. This Court, having heard and considered all of the evidence and having taken judicial notice of its records in a prior proceeding, now makes the following findings of fact and conclusions of law, as follows:

## FINDINGS OF FACT

1. On March 14, 1980, International Kitchens (hereinafter "Debtor") commenced these proceedings by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code.

2. Debtor is a Hawaii Limited Partnership, duly registered with the State of Hawaii.

3. The filing of these proceedings followed, by just three (3) months and one (1) week, this Court's dismissal for cause of a prior proceeding voluntarily filed by Debtor under the provisions of Chapter XII of the "old" Bankruptcy Act. The Chapter XII proceeding had been filed on January 10, 1977.

4. In dismissing the Chapter XII proceeding this Court found, *inter alia*, that:

a. The Debtor was in substantial administrative rent default;

b. The Debtor was in violation of Court orders by failure to pay rent and failure to file operating reports;

c. The Debtor was operating at a loss which was in excess of One Hundred Ninety Thousand Dollars ($190,000.00) at the beginning of 1979;

d. The Debtor was about to lose its only asset through a foreclosure approved by the Bankruptcy Court;

e. The Debtor was without ability to propose or confirm any viable plan of arrangement; and

f. The Debtor was without equity in any property, but nevertheless, before the Court in a Chapter proceeding filed in January 1977, and approaching three (3) years in age.

5. On the date of its dismissal, the Chapter XII proceeding had been ongoing for just one month less than three (3) years without any improvement in the Debtor's financial position.

6. The Debtor's average losses of approximately Ninety–Five Thousand Dollars ($95,000.00) per year in 1977 and 1978 continued through 1979, during which period the Debtor's gross sales dipped substantially below 1977 levels.

7. This Court has now learned that the Debtor failed to pay a substantial portion of its administrative tax obligations during the course of its Chapter XII proceeding. Whereas its tax debt on the filing of Chapter XII in 1977, was Twenty–Eight Thousand Eight Hundred Forty–Eight Dollars And Twenty–Eight Cents ($28,848.28), its tax debt on the filing of this Chapter 11 proceeding increased to Ninety–Eight Thousand Five Hundred Ninety–Nine Dollars And Ninety–Nine Cents ($98,595.99).

8. Whereas no wages were owed by the Debtor prior to the 1977 filing, the Debtor now admits to priority wage debt incurred just prior to the filing of Chapter 11 of Sixteen Thousand Dollars ($16,000.00).

9. Pearlridge is the owner of the property at Pearlridge Mall Shopping Center, Honolulu, Hawaii, at which the Debtor's fast food restaurant operations are conducted. Pearlridge is successor in interest to Kaonohi Center Company with regard to eight (8) leases (hereinafter the "Leases") executed by Debtor as tenant, dated April 20, 1973, which Leases demise the restaurant premises and the dining area surrounded by and used in common by the eight restaurants. The Leases are more specifically described by short forms thereof, executed on March 12, 1974, and filed for record in the Bureau of Conveyances of the State of Hawaii in Liber 9811 at Page 393, (Premises No. 12–15A); Liber 9811, Page 404 (Premises No. 12–16); Liber 9811 at Page 415 (Premises No. 12–17); Liber 9811 at Page 426 (Premises No. 12–19); Liber 9811 at Page 437 (Premises No. 12–20); Liber 9811 at Page 448 (Premises No. 12–24); Liber 9811 at Page 459 (Premises No. 12–25); and Liber 9811 at Page 382 (Premises No. 12–15).

10. During the course of the Chapter XII proceeding a stipulation was entered into between the Debtor and Pearlridge entitled Stipulation Re Resolution Of Various Disputes And Order Thereon (hereinafter the "Stipulation").

11. In approving that Stipulation, this Court ordered that if Debtor defaulted in "certain payment obligations" to Pearlridge, and if those defaults were not cured by either the Debtor or its secured creditor, American Security Bank and Bank of Honolulu ("Bank") within sixty (60) days after written notice of default, then any and all rights that either Debtor or Bank might claim in the "Leases" with Pearlridge would automatically terminate and neither the Debtor nor the Bank would thereafter have any rights whatsoever in the Leases.

12. The "certain payment obligations" required under the Stipulation included monthly installment payments of Four Thousand Dollars ($4,000.00) per month to Pearlridge on account of arrearages and attorneys fees owed by the Debtor to Pearlridge.

13. The Debtor made eleven (11) installment payments, the last of which was in and for the month of May 1978.

14. Notices of default were properly served upon the Debtor and Bank by Pearlridge on June 20, 1979 and again on July 25, 1979, but neither the Debtor nor the Bank made another installment payment, nor did either seek permission of this Court to terminate or suspend payments pending litigation as to the total amount of attorneys fees owed to Pearlridge.

15. Under the Stipulation Thirteen Thousand Two Hundred Six Dollars And Twenty–Eight Cents ($13,206.28) of the Forty–Four Thousand Dollars ($44,000.00) in installment payments made was to be

applied against arrearages owed to Pearlridge, and the balance was to be applied against attorneys' fees owed Pearlridge by the Debtor.

16. This Court has found that the Debtor owes Pearlridge Sixty–One Thousand Two Hundred Ninety–Nine Dollars And Twenty Cents ($61,299.20) in attorneys' fees, plus Eight Thousand Nine Hundred Ninety–Five Dollars And Fifty–Nine Cents ($8,995.59) in costs, plus interest, against which the Debtor is entitled to set off attorneys' fees awarded the Debtor by this Court. When the balance of the aforementioned installment payments received is applied thereto, there still remains a balance owing by the Debtor to Pearlridge for attorneys' fees of Thirty–Nine Thousand Five Hundred One Dollars And Seven Cents ($39,501.07), less Debtor's allowed offset of Eight Thousand Seven Hundred Forty–Three Dollars And Fifty Cents ($8,743.50), for a total of Thirty Thousand Seven Hundred Fifty–Seven Dollars And Fifty–Seven Cents ($30,757.57) plus interest and Pearlridge's claim that an amount for general excise tax should be added thereto.

17. Pursuant to the "Stipulation", any and all of the Debtor's leasehold rights at or with Pearlridge, terminated on August 20, 1979, sixty (60) days after notice of default was duly given, and therefore, the Debtor's rights and responsibilities under the Leases ceased to exist on August 31, 1979, the last day of that monthly rental period.

18. Thereafter, the Debtor was a "holdover" tenant responsible for the payment of rent to Pearlridge for the reasonable value of the use and occupancy of its premises.

19. Where, as in this case, there is no contrary evidence presented, it is appropriate that reasonable rent for use and occupancy of premises be determined to be the lease rates. As a matter of fact, the issue of the value of reasonable use and occupancy of the very same premises was litigated by the same parties in the Chapter XII case, wherein this Court decided that the payments called for under the subject leases did constitute the reasonable rent for the use and occupancy of the premises.

20. On April 1, 1980, Pearlridge, pursuant to its various Leases with all tenants at Pearlridge Mall, readjusted electrical and common area maintenance charges for 1979 and the first quarter of 1980, and Pearlridge also increased future monthly electrical and common area maintenance charges for mall tenants on April 1, 1980.

21. Pearlridge's electrical rate adjustment was made in accordance with the recommendations of an expert electrical engineer retained by Pearlridge to determine the electrical charges and charge adjustments which Pearlridge could and should properly assess to mall tenants pursuant to the Leases.

22. The electrical charge adjustments and the increased electrical charges assessed against International Kitchens were less than allowed under the Leases and they properly constitute a part of the charges which Pearlridge was entitled to make under the Leases and for the reasonable use and occupancy of its premises for 1979 and the first quarter of 1980.

23. The correct electrical charge assessed against Debtor for 1979 and the first quarter of 1980 plus Hawaii general excise tax thereon, less electrical payments already made by the Debtor is Seventy–Six Thousand Six Hundred Twenty–Three Dollars And Fifty–Nine Cents ($76,623.59), which constitutes additional rental monies owed by the Debtor to Pearlridge under the Leases and for use and occupancy of the premises.

24. In addition, International Kitchens has failed to pay Pearlridge increased monthly electrical charges properly demanded of the Debtor by Pearlridge in the sum of Six Thousand Seven Hundred Seventy–Five Dollars And Forty–Five Cents ($6,775.45) per month beginning in April 1980, totalling Twenty Thousand Three Hundred Twenty–Six Dollars And Thirty–Five Cents ($20,326.35) through June 1980.

25. Pearlridge is not by its actions a wholesaler of electricity and its electrical

charges and adjustments to the Debtor are not in violation of Hawaii P.U.C. Order No. 1849, Rule 15.

26. Pearlridge also passed on increased common area maintenance charges incurred in 1979 to its tenants which charge are also properly added under the Leases and as a part of rent for the reasonable use and occupancy of premises occupied by the tenants.

27. The reasonable and proper additional common area maintenance charge owed by International Kitchens for 1979 is One Thousand Six Hundred Thirty–Three Dollars ($1,663.00).

28. In December 1979, when Pearlridge was relieved from the automatic stay by virtue of this Court's order dismissing the Chapter XII proceeding, Pearlridge notified the Debtor of the termination of its rights and thereafter refused to waive any of its rights by accepting Debtor's tender of arrearages then owed and additional indebtedness thereafter incurred. Excluding the attorneys' fees, electrical charges and common area reconcilement heretofore mentioned, Pearlridge has not received the following sums which are properly due and owing by the Debtor:

| | |
|---|---:|
| December 1979 Rent | $ 20,478.81 |
| January 1980 Rent | 21,216.90 |
| February 1980 Rent | 21,216.90 |
| March 1980 Rent | 21,216.90 |
| April 1980 Rent | 21,279.11 |
| Percentage Rent, January through December 1979 | 20,330.03 |
| Percentage Rent, January through April 1980 | 3,373.84 |
| First and Second Half 1979–80 Real Property Taxes | 6,841.52 |
| 1979 Through March 1980 Merchant's Association Dues | 4,157.17 |
| April, May and June 1980 Merchant's Dues | 1,149.57 |
| | $140,900.75 |

29. Therefore, the total owed by Debtor to Pearlridge through June 1980, prior to application of moneys tendered by the Debtor is Two Hundred Thirty–Nine Thousand Four Hundred Eighty–Three Dollars and Sixty–Nine Cents ($239,483.69), plus the heretofore mentioned attorneys' fees, the full amount of which shall be the subject of another order of this Court.

30. Debtor has deposited One Hundred Thirty–Four Thousand Three Hundred Ninety–Five Dollars and Twenty–One Cents ($134,395.21) with the Clerk of the Circuit Court of the State of Hawaii, in Civil Action No. 49166, to be applied against rents owed by the Debtor to Pearlridge.

31. Said sum of One Hundred Thirty–Four Thousand Three Hundred Ninety–Five Dollars and Twenty–One Cents ($134,395.21) constitutes a part of the rental monies owed to Pearlridge and should properly be paid over to Pearlridge to reduce the rental indebtedness owed to it by Debtor under the Leases and for the reasonable use and occupancy of the premises at Pearlridge Mall.

32. Neither the Debtor's business operations nor its circumstances in general have changed in any manner whatsoever since the dismissal of its Chapter XII proceeding.

33. The Debtor has failed to comply with the orders of this Court. As of May 19, 1980, the Debtor had failed to pay monthly Chapter 11 rent for use and occupancy of the premises from the date of the filing of the proceedings, which this Court had ordered be paid no later than May 5, 1980, and the Debtor failed to pay the one month's advance rent which the Court required be paid on or before May 15, 1980 as "adequate protection" to Pearlridge.

34. The Debtor continues to suffer losses in its operation and its estate continues to diminish.

35. American Security Bank and Bank of Honolulu (collectively "Bank") are secured creditors of the Debtor.

36. As a result of protracted defaults, this Court, in February 1979, granted Bank relief from the Bankruptcy Act automatic stay provisions so that Bank might proceed to foreclose upon virtually all of the Debtor's assets. That State Court foreclosure proceeding is still pending and again stayed by this second bankruptcy filing.

37. Even if the Debtor's leasehold rights had not terminated, the Debtor would have no equity in its property. The secured debt owed to Bank is at least ⅓ more than the highest appraised valuation made of the assets including the leasehold, and almost five times more than the only offer received by the Circuit Court in its year long attempt to effect a sale of the Debtor's leasehold and personal property assets.

38. Even if the Debtor's leasehold rights had not terminated, the Debtor would be and the Debtor is without ability to rehabilitate.

39. Even if the Debtor's leasehold rights had not terminated, the Debtor would be and is without ability to effectuate a plan.

40. At present, reasonable rent for use and occupancy of the premises used by the Debtor at Pearlridge including electrical charges and merchant's association dues is Twenty–Eight Thousand Four Hundred Thirty–Seven Dollars And Seventy–Five Cents ($28,437.75) per month.

41. The Debtor has displayed a continued history of late or missed rent payments under and without the jurisdiction of this Court.

42. The Debtor has no visible means and has failed to offer any means by which Pearlridge might be adequately protected if rental payments were again missed by the Debtor.

43. Even before this Court found that the Debtor's leasehold rights had terminated, this Court found that the Debtor was without ability to effectively reorganize. This fact is even more obvious where the Debtor has lost all rights to its most valuable asset.

44. In that the leasehold rights are no longer assets of the estate and the Debtor is without ability to reorganize, the leasehold rights cannot be considered necessary for an effective reorganization.

45. Debtor has no rights in the leasehold property. As agreed to by the Debtor and ordered by this Court as a part of the "Stipulation", the Debtor must forthwith vacate the premises at Pearlridge and turn over possession thereof to Pearlridge.

46. In addition to the attorneys' fees heretofore mentioned, which are as a result of prior proceedings, Pearlridge is entitled to recover its costs and attorneys fees incurred in the prosecution of this matter.

47. These Findings of Fact, insofar as they are conclusions of law, are incorporated by reference in the conclusions of law hereinafter stated.

## CONCLUSIONS OF LAW

48. Any and all interests of the Debtor in the property leased by the Debtor from Pearlridge at Pearlridge Mall were terminated on August 31, 1979. On September 1, 1979, and thereafter, Debtor was a holdover tenant at Pearlridge Mall, responsible for the payment of reasonable rent to Pearlridge for the use and occupancy of the premises.

49. Pearlridge did properly make demand for and is entitled to immediate vacation of the premises by the Debtor and the immediate return of said premises to Pearlridge.

50. Pearlridge is entitled to be and should be relieved from the automatic stay provided under § 362 of the Bankruptcy Code and from any other injunctive orders, automatic or otherwise, which might restrain Pearlridge from the pursuit of relief against the Debtor in any court of competent jurisdiction, or as allowed under the Law.

51. The amount of One Hundred Thirty–Four Thousand Three Hundred Ninety–Five Dollars and Twenty–One Cents ($134,-395.21) deposited by Debtor in the Circuit Court plus the additional sum of One Hundred Five Thousand Ninety–Eight Dollars And Forty–Eight Cents ($105,098.48) are due, owing and payable by the Debtor to Pearlridge.

52. In addition, attorneys' fees are owed by Debtor to Pearlridge for services rendered in the Chapter XII proceeding. The full amount owing shall be the subject of a separate order of this Court.

53. Pearlridge is also entitled to its costs and reasonable attorneys' fees incurred in the prosecution of this matter.

54. These Conclusions of Law, insofar as they are findings of fact, are incorporated by reference into the findings of fact hereinbefore stated.